**Donald L. Scales**
**217 Laurel Street**
**Medford, OR 97501**
**donscales05@msn.com**
**(541) 772-2363**
**Attorney for Defendant**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**ERNEST LUTHER TAYLOR,**

**Defendant.**

**CR No. 15-CR-00173-AA**

**MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS**

## FACTS

On February 11, 2014, in Medford, Jackson County, Oregon, Detective Jennifer Newell of the Medford Police Department authored an affidavit for search warrant regarding allegations of illegal drug manufacture and delivery against Mr. Taylor. In the request for the search warrant, Detective Newell included a list of items law enforcement wanted to seize. Included in the list was an entry for cell phones. A circuit court judge signed the search warrant. On February 18, 2014, officers executed the search warrant at

Mr. Taylor's residence. Multiple evidentiary items were seized and searched, including a cell phone. Some months later, the cell phone was forensically evaluated. The forensic evaluation uncovered digital imagery that is the subject of the current charges. In August 2014, two more search warrants were issued based upon the evidence unlawfully seized from the first cell phone.

## ISSUES

I. THE AFFIDAVIT FOR SEARCH WARRANT DID NOT SUPPORT PROBABLE CAUSE THAT MR. TAYLOR'S CELL PHONE WOULD CONTAIN EVIDENCE OF ANY CRIME.

II. NO REASONABLE OFFICER COULD HAVE BELIEVED THE WARRANT TO BE VALID AS TO THE CELL PHONE; THE GOOD FAITH EXCEPTION DOES NOT APPLY.

III. EVEN IF THE AFFIDAVIT SUPPORTED A FINDING OF PROBABLE CAUSE, A SEPARATE SEARCH WARRANT WAS REQUIRED BEFORE LOOKING AT THE CONTENTS OF THE CELL PHONE.

## ARGUMENT

### I. THE AFFIDAVIT FOR SEARCH WARRANT DID NOT SUPPORT PROBABLE CAUSE THAT MR. TAYLOR'S CELL PHONE WOULD CONTAIN EVIDENCE OF ANY CRIME.

To satisfy the demands of the Warrant Clause of Fourth Amendment, a warrant must comply with two related but distinct rules. First, it must describe the place to be searched or things to be seized with sufficient particularity, taking account of the circumstances of the case and the types of items involved. Second, it must be no broader than the probable cause on which it is based. The particularity rule and the probable cause rule serve a common purpose: to protect privacy by prohibiting a general, exploratory rummaging in a person's belongings. The Tenth Circuit noted:

> "The essential inquiry when faced with challenges under the Fourth Amendment is whether the search or seizure was reasonable – reasonableness is analyzed in light of what was reasonable at the time of the Fourth Amendment's adoption…It is axiomatic that the Fourth Amendment was adopted as a direct response to the evils of general warrants in England and the writs of assistance in the Colonies." *O'Rourke v. City of Norman*, 875 F.2d 1465, 1472 (10th Cir. 1989).

The Ninth Circuit has stated that probable cause under the Fourth Amendment requires a "fair probability that contraband or evidence of a crime will be found in a particular place based on the totality of the circumstances." *Dawson v. City of Seattle*, 435 F.3d 1054, 1062 (9th Cir. 2006) (quoting *Illinois v. Gates*, 462 US 213, 238 (1983)).

In the case at bar, the affiant of the affidavit for search warrant went to great lengths to explain facts that supported the allegations of illegal drug operations. (See Affidavit for Search Warrant and Search Warrant, authored by Detective Newell of the Medford Police Department, attached as Exhibit A). <u>Nowhere</u> in her affidavit does she mention a single fact that relates defendant's particular conduct or circumstances regarding the cell

phone. Notably, Officer Newell never even included any information regarding her training and experience related to alleged drug dealing and its relationship to cell phone contents. In this case, the affidavit for search warrant is *entirely silent* as to facts about cell phones. Aside from including "cell phones" as a generic entry in a list of things to seize, the only other mention of cell phones in the affidavit is found in a paragraph on page 18-19 that states as follows:

> "Conducting a search of digital devices such as phones, documenting the searches and making evidentiary and discovery copies can take over 5 business days. Complex systems or recovery tasks can require an excess of 45 business days. Due to the backlog of digital evidence pending examination and the limited number of trained forensic examiners, it is possible to take up to 12 months or more before the evidence will be fully processed." Affidavit, p. 18-19.

This paragraph is a boilerplate paragraph explaining why a digital search may take longer than 5 days. The same boilerplate paragraph is in the actual warrant. It does not accomplish identifying defendant's particular behavior as it relates to the cell phone; it does not support a "fair probability that contraband or evidence of a crime will be found in a particular place based on the totality of the circumstances." *Dawson, supra.*

Reading the affidavit in a commonsense and realistic fashion, there is no possible way to draw reasonable inferences regarding cell phones where the affiant never even mentioned them, or how they related to the defendant's specific alleged drug-related conduct. Thus, the affidavit for search warrant in this case fails to establish probable cause specific to the phone.

II. NO REASONABLE OFFICER COULD HAVE BELIEVED THE WARRANT TO BE VALID AS TO THE CELL PHONE; THE GOOD FAITH EXCEPTION DOES NOT APPLY.

Suppression of evidence seized pursuant to a warrant unsupported by probable cause is not appropriate if the government relied on the warrant in good faith. *United States v. Leon*, 468 US 897, 923 (1984). However, suppression remains appropriate when a warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown v. Illinois*, 422 US 590, 611 (1975). As the Supreme Court recently explained, "the threshold for establishing this exception is a high one" because "in the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination." *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1345 (2012) (quoting *Leon*, 468 US at 921). But if the affidavit fails to "establish at least a colorable argument for probable cause," *United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006), it fits within the "narrow exception" to *Leon's* good faith reliance rule.

Defense asserts that no reasonable officer could have believed the warrant to be valid as to cell phones. The affidavit does not provide any plausible connection between Mr. Taylor's alleged drug dealing activities and a cell phone. That affiant provided no information at all regarding drug activity and its relation to cell phones. Thus, the affidavit fails to establish at least a colorable argument for probable cause and fits squarely within the narrow exception to *Leon*.

III. EVEN IF THE AFFIDAVIT SUPPORTED A FINDING OF PROBABLE CAUSE, A SEPARATE SEARCH WARRANT WAS REQUIRED BEFORE LOOKING AT THE CONTENTS OF THE CELL PHONE.

Assuming for the sake of argument that probable cause did exist in the affidavit for search warrant, the warrant only authorized a seizure of cell phones; it did not authorize a separate and distinct search of cell phones. If the court finds that the seizure of cell phones was authorized, a separate warrant authorizing a search of the cell phone contents was required before the government searched the cell phone. *See Riley v. California*, 134 S.Ct. 2473, 2480 (2014) (discussing the interrelated privacy consequences of searching a person's cell phone).

Although *Riley* was a case about a search incident to arrest, the general principles apply. First, in *Riley* the officers lawfully seized a cell phone incident to arrest. In Mr. Taylor's case, if the warrant is found to be supported by probable cause, the phone was lawfully seized.

In *Riley*, without first obtaining consent or a search warrant, the government searched the contents of the phone and discovered evidence of apparent gang membership. That information led them to charge Riley in connection with a shooting that had occurred a few weeks earlier. The government also sought a sentence enhancement due to his alleged gang membership. Riley moved to suppress the evidence but was denied and ultimately convicted.

In the case at bar, like in *Riley*, the government searched the contents of the cell phone without first seeking either consent or a warrant specifying that a search of the cell phone's contents was permissible.

In *Riley*, the Court declined to extend the holding in *United States v. Robinson*, 414 US 218 (1973), (that a custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment so a search of the arrestee's person needed no further justification) to Riley. It declined in large part due to the technological advances in smart phones that were not conceivable when *Robinson* was decided. In explaining, the court discussed the privacy concerns related to today's smart cell phones:

> "First, a cell phone collects in one place many distinct types of information that reveal much more in combination than any isolated record. Second, the phone's capacity allows even just one type of information to convey far more than previously possible. Third, data on the phone can date back for years." *Riley*, 134 S. Ct. at 2480.

The Court stated that the term "cell phone" is misleading because smart phones are essentially "minicomputers that also happen to have the capacity to be used as a telephone." *Riley*, 134 S.Ct. at 2488. Further, "the sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions." *Riley*, 134 S.Ct. at 2489.

The Supreme Court's cases

> "have recognized that the Fourth Amendment was the founding generation's response to the reviled 'general warrants' and 'writs of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity.

> Opposition to such searches was in fact one of the driving forces behind the Revolution itself." *Riley*, 134 S.Ct. at 2494.

The Court continued on to say that it recognized that the *Riley* decision will have an impact on the ability of the government to combat crime, but stated that "[p]rivacy comes at a cost." *Riley*, 134 S.Ct. at 2492. The Court in *Riley* held the lawfully seized cell phone (by search incident to arrest) was unlawfully searched without a warrant; the conviction was overturned.

In the case at bar, even if this Court finds there was probable cause to support the seizure of the cell phone, the subsequent search of the cell phone was unreasonable under the Fourth Amendment. The Supreme Court provided clear guidance where searches of the contents of lawfully seized cell phones was concerned: "Get a warrant." *Riley*, 134 S.Ct. at 2494.

**CONCLUSION**

The affidavit for search warrant authored by Detective Newell in this case is devoid of a single assertion that evidence of drug transactions would be found in any cell phone possessed by Mr. Taylor. *Leon's* good faith exception does not apply. Further, even if the Court holds the warrant was supported by probable cause, it only authorized a seizure. The subsequent search required a new search warrant. The evidence obtained from the cell phone search, and any and all derivative evidence subsequently obtained in the two August 2014 search warrants issued based on the files found in the cell phone should be suppressed as a matter of law under the Fourth Amendment. *See Wong Sun v. United States*, 371 U.S. 471 (1963) (fruit of the poisonous tree doctrine).

DATED this 12th day of August, 2015.

/s/ *Donald L. Scales*
Donald L. Scales
Attorney for Defendant